ROY SPAULDING

*v.*

WARDEN, *West Virginia State Penitentiary*

(No. 13489)

Decided March 18, 1975.

*William H. Higinbotham* for appellant.

*Chauncey H. Browning,* Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, *Richard E. Hardison,* Deputy Attorney General for appellee.

SPROUSE, JUSTICE:

This case involves an appeal by Roy Spaulding from a final judgment of the Circuit Court of Monongalia County, denying the appellant relief in habeas corpus. The defendant was convicted in the circuit court of breaking and entering. He was sentenced to a term of one to fifteen years in the West Virginia Penitentiary, five years having been added to the standard one to ten year sentence because of the appellant's previous conviction for the same offense. Notice of intent to appeal was not filed until five months after the entry of final judgment, contrary to the mandatory sixty-day requirement of Code, 1931, 58-5-4, as amended.

The appellant subsequently filed a petition for habeas corpus in the circuit court raising a number of constitutional issues. Relief in habeas corpus was denied, and the defendant appealed to this Court. In the proceeding here, the defendant raised a number of other errors alleged to have been committed in the trial court, including the refusal of the court to grant certain pretrial motions, error in fixing a notification of the criminal docket, the manner in which the prosecuting attorney delivered his final argument, excessive bail prior to trial, and the manner in which the added sentence was imposed under the recidivist statute. While there may be merit to some of these alleged errors, most of them have no constitutional or jurisdictional basis which would render the conviction void or subject to collateral attack; they were, therefore, lost to the defendant by his failure to file notice of intent to appeal as required by Code, 1931, 58-5-4, as amended. Code, 1931, 53-4A-1, as amended. See, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91. Some of these assigned errors ordinarily reviewable by habeas corpus are not considered for other reasons. The sentencing of the defendant under the recidivist statute is not considered because of our decision to grant relief upon other grounds. The question of excessive bail prior to trial has been mooted by the defendant's conviction.

There are three principal issues which were properly presented: (1) Was the confession of the defendant unconstitutionally introduced into evidence without a prior *in camera* hearing concerning its voluntariness; (2) was evidence of the theft obtained as the result of an unlawful search and seizure; and (3) was the defendant deprived of his constitutional right to legal representation at a preliminary hearing?

The defendant occupied an apartment in Morgantown which he shared with Gail and Charles Tanner. Mike Freed, an occupant of the apartment building in which the defendant resided, testified that at about 2:30 a.m. on August 23, 1972, he saw Gail Tanner, an alleged co-felon, leave the apartment building carrying a flashlight

and what appeared to be gloves. Since he was unable to sleep, the witness left his apartment and walked down Beechurst Avenue. He saw the Tanner car and observed three individuals in the car. He called the Westover police telling them "the Tanners are in the area and probably up to no good." Thereafter two officers proceeded to patrol the area. Approximately one hour later, a woman notified the police that she was awakened by the sound of breaking glass at Sheets' Appliance Store. She looked out the window and saw movement in the appliance store. When the officers arrived at the scene, they found a window had been broken and glass was laying "all over the place." A check of the area was made, but no one was found. There were five clocks setting on the store steps "as if someone had placed them there to remove them later on."

At 9:00 a.m. on the same day, Trooper Cook of the Department of Public Safety received a request for assistance in the investigation from the Westover Police Department. He proceeded, with the aid of the Westover Police Chief, to take statements from the store owner and the individual who had notified the police about the offense. Thereafter the two officers went to the defendant's apartment building to talk with Freed. Freed told them the Tanners were getting ready to leave in their car.

The trooper testified that he attempted to apprehend the two Tanners, but one escaped. He took Charles Tanner into custody and questioned him unsuccessfully at the State Police Detachment. Warrants for the Tanners and the defendant were obtained from a justice of the peace at about 1:00 p.m. on August 23rd. The record does not disclose how the police became aware of defendant's involvement. At approximately 2:00 p.m., Trooper Cook was notified by the Westover police that Robert Tanner and the defendant had been apprehended, but that, after being handcuffed, the defendant had escaped. The defendant was apprehended a second time at about 7:00 p.m. that evening.

Trooper Cook stated that the Tanner vehicle was searched at about 4:00 p.m. and that seven clocks were found in the trunk. He stated that a search warrant had been obtained by the Westover police officer and that Charles Tanner had given him the key and consented to the search of the trunk. He testified that he placed the search warrant on the windshield of the vehicle. The clocks were admitted into evidence over the objection of counsel for the defendant that there had not been "sufficient showing or grounds laid that these clocks * * * relate to the defendant."

Trooper Cook testified that he was present that evening when the defendant was apprehended. While Cook testified at the trial that he merely knocked the defendant to the ground in an attempt to apprehend him, he admitted at the habeas corpus hearing that the defendant was kicked and beaten and carried to the police cruiser. The defendant was then taken to the state police barracks and his constitutional rights and the warrant were read to him. Cook's trial testimony indicated that the defendant was then taken to the hospital and later lodged in the county jail; that he made a confession on August 24, 1972; and that on August 24 or 25, 1972, he was taken before a justice of the peace where "he was read his rights, and he said 'that he did not want an attorney'." Bond was set by the justice of the peace at that time at $30,000 and "Mr. Spaulding represented himself at his own request."

At trial, the defendant testified that he was apprehended and incarcerated without a warrant; that he was kicked by an officer in the head; that his head wound required stitches; that he bought the clocks from a man named Mike; and that he signed the confession after "being bashed and roughed around."

The State concedes that the defendant's confession was extracted under adverse conditions without the benefit of counsel and was subsequently used at trial without a prior *in camera* hearing to determine its voluntari-

ness. A confession of error on this ground is contained in the State's answer.

The following testimony was produced at trial and is supportive of the confession of error. Trooper Cook testified:

> "* * * As I got out of the car, McCarty and I were both telling him to lay down, face down on the ground. * * * I tried to—I started to kick him down, but I didn't. I never kicked him. I pushed him and knocked him down. I tried to get his hands to put them on him, but he struck at an officer."

The defendant testified:

> "Well I was pushed around, roughed around and a man asked me if I didn't want to sign a confession. Well I didn't want to sign one, but I assumed that I was going to get forced to sign one and so I went ahead and signed one. After I got smacked a couple of times I signed it after being bashed and roughed around and so I signed it."

At the habeas corpus hearing before the trial court, Trooper Cook again testified concerning the use of violence:

> "Q. Alright. And Mr. Cooke, there was a statement made in the trial relative to a beating having occurred at the time of arrest. Did that occur, sir?
>
> "A. Yes.
>
> "Q. And was he kicked around or beaten around?
>
> "A. Yes, he was.
>
> "Q. And was he done so to a point where he— could he walk after such beating?
>
> "A. I carried him to the car, me and another officer.
>
> "Q. Then Mr. Cooke, where was he taken?

"A. He was taken to the barracks, the Morgantown State Police Barracks.

"Q. And on what day was this, sir?

"A. I don't remember exactly.

"Q. At this time, was this the time when he gave or made a confession?

"A. No, sir.

"Q. Where was he taken after—did anything else occur at the barracks?

"A. Yes, sir. I noticed a cut over his eye, and there was some blood on his hair. I took him behind the barracks where the water hose was, and he was muddy and he had been in the river and I washed him down with a water hose. I washed his cuts and I set him down in the garage of the barracks and I got towels and I wiped him off and dried him.

"Q. Where was he taken after the barracks, sir?

"A. As best as I can recall he was taken to the county jail in Monongalia County."

At the time the confession was admitted into evidence, counsel for the defendant made the following objection:

"We do however object because of certain questions which are written on the third page in which there are insertions of the word 'yes' on blanks which the defendant says are not in his handwriting. I therefore make a blanket objection to the introduction of this written statement into evidence."

No specific request was made for an *in camera* hearing and none was held by the trial court.

Despite the fact that counsel made no specific request, both *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669, and *Jackson v. Denno*, 378 U.S. 368, impose a mandatory duty upon the trial court to hear the evidence and determine the voluntariness of a confession out of the presence of the jury prior to its introduction into evidence.

This rule of constitutional law is so well established that it calls for little discussion. However, even if the rule were less demanding, certainly the circumstances of this case should have made it obvious to the trial court that such a hearing was demanded. The State properly recognized this on appeal, and the case must be reversed for this obvious reason.

The second question cannot be so easily resolved. As framed by counsel, the issue relates to the admission into evidence of allegedly stolen items, consisting specifically of certain clocks, without the introduction into evidence of the applicable search warrant and relevant facts concerning the warrant and the search. The search warrant was not produced either at the defendant's trial or at the habeas corpus proceeding. The evidence produced by the State and the defendant as to the existence of a search warrant was conflicting.

The clocks were found in the trunk of the Tanner vehicle. The defendant was not present or in the vicinity when the vehicle was searched. Trooper Cook testified that a search warrant had been obtained and placed on the windshield of the vehicle prior to the search. Cook also stated that Tanner consented to the search and gave him the keys to open the trunk. The defendant and two other residents of the defendant's apartment building testified at the trial that no search warrant was ever shown to them.

We cannot say, under the circumstances of this case and the facts surrounding the police investigation, that the evidence was not properly obtained and admitted into evidence. It is true that a defendant is not required to have a proprietory interest in property in order to object to its search. *Jones v. United States*, 362 U.S. 257; *United States v. Jeffers*, 342 U.S. 48. It would appear, however, that, in order to have standing to object to an unlawful search of an automobile, a defendant would at least have to show that he had some interest in the

vehicle or was a passenger in it at the time of the search. *Kirkland v. State,* 249 Ind. 305, 232 N.E.2d 365; *State v. Roberts,* 210 Kan. 786, 504 P.2d 242; *State v. Harrison,* 14 N.C.App. 450, 188 S.E.2d 541; Weeks, Standing to Object in the Field of Search and Seizure, 6 Ariz. L. Rev. 65, 73–74; 1 Varon, Searches, Seizures and Immunities 598. Here, the defendant has not shown any connection with the search. The burden was on him to show sufficient interest in the vehicle to give him standing to object to the search. In habeas corpus proceedings, except for "assistance of counsel" cases, the petitioner has the burden of establishing by a preponderance of the evidence a violation of his constitutional rights. *Moore v. Michigan,* 355 U.S. 155; *State ex rel. Scott v. Boles,* 150 W. Va. 453, 147 S.E.2d 486.

Finally, we must determine whether the defendant's constitutional right to counsel was denied at a preliminary hearing. The testimony concerning the time and nature of the defendant's appearance before the justice of the peace is at best confusing.

At the habeas corpus proceeding, the justice of the peace who issued the warrants testified in relation to the events surrounding the defendant's arrest. The warrant in question was issued on August 23, 1972. The transcript of the criminal docket indicates that the warrant was executed on August 24 and that the defendant was held for bond and a preliminary hearing. The transcript dated October 3, 1972, revealed that the defendant was held for action of the grand jury. The justice could not remember whether a preliminary hearing was held. She testified that August 23, 1972, was "no doubt the date he could have had his hearing." She further stated that she could not remember "whether there was a hearing then or whether he waived."

Code 62-1-6 provides:

"The justice shall in plain terms inform the defendant * * * of his right to have a preliminary examination * * *."

*Code* 62-1-8 states:

"If the offense is to be presented for indictment, the preliminary examination shall be conducted by a justice of the county in which the offense was committed within a reasonable time after the defendant is arrested, unless the defendant waives examination. The defendant shall not be called upon to plead. Witnesses shall be examined and evidence introduced for the State under the rules of evidence prevailing in criminal trials generally. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf."

In *Coleman v. Alabama*, 399 U.S. 1, the Supreme Court held that a preliminary hearing is not constitutionally required. Under the *Coleman* decision, however, if a preliminary hearing is held, it becomes a critical stage in the criminal process to which the Sixth Amendment right to counsel attaches. Denial of counsel in this instance constitutes error for which the defendant is entitled to relief, unless the State can demonstrate beyond a reasonable doubt that the denial of counsel was harmless error. The court in *Coleman* laid down four criteria to test the possibility of harm to the presentation of the defendant's defense in a criminal matter.

"Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his

client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." *Coleman v. Alabama, supra* at 9.

It is impossible to determine from this record whether there was in fact a preliminary hearing. Assuming that such a preliminary examination was held, it is difficult to conceive of more appropriate circumstances for requiring the assistance of counsel. The defendant had been beaten by the arresting officers. He raised questions concerning the search of the car for the stolen clocks. The manner in which the defendant resisted arrest could have indicated to trained counsel the presence of psychiatric problems, and the question of excessive bail could have been resolved. In other words, elements of the four criteria in *Coleman* were present. It is not necessary, however, to resolve the question of whether a preliminary hearing was held since any purpose the preliminary hearing might have served, had the defendant been represented by counsel, has since been adequately fulfilled by the first trial where the defendant did have the assistance of counsel. See *Schnepp v. Hocker*, 429 F.2d 1096 (9th Cir.).

For reasons stated in this opinion, the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded to the circuit court for the entry of an order discharging the appellant from confinement pursuant to his conviction and sentence of December 7, 1972, subject to the right of the State to take such further proceedings as are consistent with the rulings announced in this decision.

*Reversed and remanded with directions.*