David **MEADOWS**, Plaintiff-Appellee,

v.

Manfred G. **HOLLAND**, Defendant-Appellant.

No. 86–6748.

United States Court of Appeals, Fourth Circuit.

Argued June 1, 1987.

Decided Oct. 16, 1987.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting en banc.

K.K. HALL, Circuit Judge:

The Attorney General of the State of West Virginia, acting on behalf of Manfred G. Holland, Superintendent of the West Virginia State Penitentiary ("the State"), appeals an order of the district court granting a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by David Meadows, a West Virginia inmate. We granted an initial en banc hearing in this matter in order to review definitively, the State's contention that a prior decision of this Court interpreting West Virginia law and relied upon by the district court in granting habeas relief was wrongly decided. We now reverse.

I.

On April 17, 1981, petitioner Meadows was found guilty by a jury in Mercer County, West Virginia, of the first degree murder of a former girlfriend, Gloria Darlene Hairston. Hairston had disappeared from her home on the evening of November 28, 1979. Her body was eventually discovered on January 17, 1980. She had died as a result of multiple gunshot wounds.

The evidence presented against Meadows at trial was admittedly circumstantial. According to witness testimony, Meadows engaged in a physical altercation with Hairston at her place of employment on November 28, 1979. During that incident, he struck both Hairston and another employee with whom he accused her of having an affair. He also threatened them with a knife and allegedly stated that "I'm not through with you all yet."

Later that same day, Meadows borrowed a 1975 blue Chevrolet Caprice from a friend, Veronica Finney. Finney subsequently testified that Meadows returned her automobile at either 7:20 p.m. or 8:20 p.m. She further testified that Meadows

Silas B. Taylor, Deputy Atty. Gen. (Charles G. Brown, Atty. Gen., Charleston, W.Va., on brief) for appellant.

James Audley McLaughlin, Charleston, W. Va. (Deborah C. McHenry, West Virginia University College of Law, Morgantown, W.Va., on brief) for appellee.

remained at her home watching television until approximately 10:30 p.m.

Other witnesses testified that they had seen Hairston's automobile parked along the road early in the evening of November 28. Witnesses also testified to observing a car resembling the one borrowed by Meadows parked behind Hairston and to hearing a woman scream as well as two gunshots. Buckshot, blood of Hairston's type, her glasses, and a button from her blouse were all discovered near the site where the two cars were seen.

Meadows' defense at trial relied primarily upon an assertion of alibi. In addition to Finney's testimony that Meadows had returned to her home by 8:20 p.m., the defense also presented a witness who testified to having seen Hairston at a nearby train station between 8:40 and 8:55 p.m. The defense also relied upon the State's inability to establish with any precision the time of Hairston's death.

As the case was presented to the jury, the trial court gave the following instruction on the issue of alibi:

> The Court instructs the jury that while the burden of proving an alibi is on the defendant, on account of its affirmative nature, this does not dispense with the necessity the state proving the actual presence of the defendant at the place where, and at the time when, the crime was committed, and if from the evidence the jury has a reasonable doubt as to the presence of the defendant at the place where, and at the time when, the offense was committed, they should acquit him.[1]

Following his conviction, Meadows filed an appeal with the West Virginia Supreme Court of Appeals in May, 1982. In the interval between Meadows' trial and the filing of his appeal, this Court decided the case of *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982). In *Adkins* we affirmed the grant of habeas relief to a West Virginia petitioner on the ground that an alibi instruction given at his trial unconstitutionally shifted the burden of proof on an essential element of the crime from the state to the defendant.[2] Of particular significance to this appeal, we also held that habeas relief was not procedurally barred by the petitioner's failure to object to the instruction at trial because West Virginia did not apply a contemporaneous objection rule to a "constitutional or jurisdictional challenge." *Adkins*, 674 F.2d at 282.

On direct appeal, Meadows raised five issues with regard to his conviction. Surprisingly, however, he did not present any objections to the jury instruction on alibi based upon our decision in *Adkins*. Meadows' conviction was subsequently affirmed by the West Virginia court in *State v. Meadows*, 304 S.E.2d 831 (W.Va.1983). Although the dissenting opinion in *Meadows* questioned the constitutionality of the jury instruction, there is no indication that the majority considered the issue which had been neither briefed nor argued.

In December, 1984, Meadows sought post-conviction relief through a state habeas corpus petition filed with the Mercer County Circuit Court. In this petition, he asserted for the first time, a claim that the jury instruction given at his trial was unconstitutional. The Circuit Court, under the mistaken assumption that the claim had been addressed on direct appeal and, thus, was not subject to relitigation under West Virginia law, dismissed the petition.

> The Court instructs the jury that where the state has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.

---

**1.** The instruction given at Meadows' trial was a variant of the alibi instruction approved by the West Virginia Supreme Court of Appeals in *State v. Alexander*, 245 S.E.2d 633 (W.Va.1978). The instruction was given in response to the defense's request. The State objected to any alibi instruction on the ground that the evidence was insufficient to raise a valid jury question on that issue.

**2.** The instruction at issue in *Adkins*, which was strikingly similar to the instruction given at Meadows' trial, stated that:

Rather than appealing the dismissal, Meadows filed an original habeas petition with the West Virginia Supreme Court of Appeals. Following its normal practice with regard to initial habeas petitions, the court refused to grant a writ. The refusal, however, was without prejudice to Meadows' right to refile the petition in Circuit Court.

At this juncture, Meadows abandoned any further effort at pursuing state remedies. On July 5, 1985, he filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 with the district court raising the alleged instructional error as one of seven grounds justifying post-conviction relief. All of Meadows' claims except that based on the jury instruction were dismissed. The remaining claim was referred to the magistrate for a report and recommendation.

In a report issued on July 11, 1986, the magistrate recommended that habeas relief be granted. After considering the timely objections presented by the State, the district court adopted the magistrate's findings. The court concluded that, notwithstanding the State's effort to distinguish the instruction at Meadows' trial from that at issue in *Adkins*, both instructions suffered from the same constitutional infirmity. The district court rejected an effort by the state to assert a bar of procedural default based upon Meadows' failure to object at trial, reasoning that *Adkins* was controlling authority on that question. Finally, the court found no merit in the State's somewhat belated assertion that Meadows had failed to exhaust available state remedies.[3] Accordingly, the court ordered that the State of West Virginia either release Meadows from custody within ninety days or retry him.

A timely appeal to this Court was filed by the State. The relief ordered by the district court has been stayed pending resolution of the appeal.

## II.

On appeal, appellant's principal contentions are essentially identical to the objections to the magistrate's report presented to the district court. The State argues that the alibi instruction given at Meadows' trial is distinguishable from the instruction in *Adkins* and thus, did not render petitioner's trial fundamentally unfair. The State also contends that Meadows has not totally exhausted available avenues of state post-conviction relief. Finally, the State contends that petitioner's failure to object at trial to the form of the alibi instruction amounts to a procedural default that precludes habeas relief. In support of the latter contention, the State argues that more recent decisions of the West Virginia Supreme Court of Appeals demonstrate that our assessment of the West Virginia contemporaneous objection rule articulated in *Adkins* was flawed. We find appellant's argument on the issue of procedural default both persuasive and dispositive.[4]

The doctrine whereby a criminal defendant's failure to observe a state contemporaneous objection rule operates as an "adequate and independent state ground" that bars habeas relief is a "well-established principle of federalism." *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977). Moreover, the deference thereby accorded a contemporaneous objection rule in federal habeas proceedings is more than merely a matter of comity. Rather, it is an implicit recognition of the fact that a procedure which encourages a timely consideration of all issues relevant to a criminal prosecution has substantial independent value.[5]

---

3. The State initially conceded that Meadows had exhausted his remedies under state procedure. It subsequently argued, however, that the West Virginia Supreme Court's refusal, without prejudice, of his original petition left further remedies available.

4. Our resolution of this question renders consideration of the State's remaining contentions unnecessary.

5. In *Wainwright, supra,* the Court observed that when a defendant has been accused of a serious crime, it is important that:

> To the greatest extent possible all issues which bear on this charge should be determined in

Obviously, if a state either does not have or does not enforce procedures which require timely objection to alleged trial errors, the subsequent consideration of a habeas petitioner's claims does not undermine the societal interest in promptly resolving all issues attendant to a criminal prosecution. Neither does federal habeas review under such circumstances imply "disrespect for the State by entertaining the claim." *County Court of Ulster Cty. v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

█ A decision in a federal habeas proceeding that a state does not require contemporaneous objection is, however, a significant determination. The effect is to substantially diminish the concept of finality in the operation of the state criminal justice system. It is, therefore, a conclusion that should not be reached lightly or without clear support in state law.[6] Upon reconsideration, we now conclude that our analysis in *Adkins* did not satisfy that standard.

█ When we examined the issue of procedural default in *Adkins,* we acknowledged that no decision of the West Virginia Supreme Court of Appeals had been rendered that was "precisely dispositive" of the question. 674 F.2d at 282. We, therefore, relied upon dicta from *Spaulding v. Warden,* 158 W.Va. 557, 212 S.E.2d 619 (1975), to guide our deliberations. In *Spaulding,* the West Virginia court noted that while certain trial errors asserted by a state habeas petitioner may have had merit, they had

no constitutional or jurisdictional basis which would render the conviction void or subject to collateral attack; they

this proceeding; the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desir-

were, therefore, lost to the defendant by his failure to file notice of intent to appeal as required by Code, 1931, 58–5–4, as amended. Code 1931, 53–4A–1 as amended. See *Ford v. Coiner,* [156] W.Va. [362] 196 S.E.2d 91.

Reasoning from the obverse of the *Spaulding* dicta, we concluded that West Virginia did not require rigid compliance with procedural rules with regard to errors of constitutional or jurisdictional magnitude.

Although our conclusion in *Adkins* was not inherently unreasonable, a further examination of West Virginia law now convinces us that one ambiguous sentence from *Spaulding* cannot bear the weight we have previously assigned to it. We note initially that *Ford v. Coiner, supra,* cited as controlling authority for the statement in *Spaulding,* analyzed the issue of procedural default under the relevant West Virginia statute without distinguishing between constitutional and non-constitutional errors. It is difficult to reconcile a bifurcated interpretation of *Spaulding* with the unified doctrine articulated in *Coiner.*

More recent case law has suggested even more decisively that the application of contemporaneous objection and procedural default in West Virginia is not dependent upon the nature of the asserted error. In *State v. Kopa,* 311 S.E.2d 412 (W.Va.1983), the court concluded, in conformity with our decision in *Adkins,* that treating alibi as an affirmative defense was an unconstitutional shift of the burden of proof. Significantly, however, the court also held that the improper instruction could only be challenged in "cases currently in litigation or on appeal *where the error has been prop-*

able, and the contemporaneous-objection rule surely falls within this classification. 433 U.S. at 90, 97 S.Ct. at 2508.

**6.** In *Ulster, supra,* the Supreme Court exhaustively examined both the statutory formulation of the New York contemporaneous objection rule as well as the application of that rule in numerous judicial decisions before concluding that a habeas petition was not barred by procedural default. 442 U.S. 150–54, 99 S.Ct. at 2221–23.

*erly preserved at trial."* 311 S.E.2d at 422 (emphasis added).[7]

The existence of stringent rules governing procedural default strongly implied in *Kopa* was further buttressed by the decision in *State v. Hutchinson*, 342 S.E.2d 138 (W.Va.1986). The court therein declined to consider on direct appeal an allegedly erroneous jury instruction on alibi in the absence of a timely objection at trial stating that:

> It is implicit in decisions of this Court that the Fourth Circuit takes us further than we have desired to go in its perception of our application of the contemporaneous objection rule to potential errors of constitutional magnitude. Recently we refused to address a claimed error in the cross-examination of a criminal defendant related to his post-arrest silence. *State v. Acord,* — W.Va. —, 336 S.E.2d 741, 745 (1985). Although the error may have been of constitutional dimension, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977); *State v. Oxier,* — W.Va. —, 338 S.E.2d 360 (1985); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), we did not address the issue in *State v. Acord,* supra, because of the failure to object.

342 S.E.2d at 142–43. The court in *Hutchinson* further observed that:

> although this Court may, under Rule 30 of the West Virginia Rules of Criminal Procedure, notice plain error in the giving of an erroneous instruction (in the absence of a proper and timely objection at trial), this Court will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial.

*Id.* at 143.

After *Hutchinson,* there can be absolutely no doubt that West Virginia will not consider on direct appeal any but the most egregious constitutional error unless there has been a timely objection made at trial. It is distinctly unreasonable to suggest that compliance with rules of contemporaneous objection is required in West Virginia for direct appeal but excusable in a petition for habeas relief. We are also unpersuaded by appellee's suggestion that *Kopa* and *Hutchinson* are reflective only of the present state of the law and that the scope of procedural default at his trial in 1981 was controlled by the more permissive rationale of *Spaulding.* Nothing in *Kopa* or *Hutchinson* suggests that new law was being articulated. Indeed, the explicit statement of the court in *Hutchinson* that "the Fourth Circuit takes us further than we have desired to go" clearly implies that any alterations in West Virginia law have flowed entirely from our decisions.

After a thorough examination of the decisions of the West Virginia Supreme Court of Appeals, we are now convinced that West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review. Our contrary determination in *Adkins v. Bordenkircher* is expressly overruled.[8] It follows, therefore, that the State was entitled to offer the conclusive defense of procedural default in response to Meadows' habeas petition unless petitioner could establish both "cause and prejudice" for his conceded failure to object to the alibi instruction at trial.

■ Normally a remand to the district court for consideration of the issues of "cause and prejudice" under *Wainwright, supra,* would be appropriate at this juncture. We find that course unnecessary, however. The record unequivocally discloses that any effort by Meadows to estab-

---

**7.** The court's statement was admittedly made in the context of a discussion of retroactivity rather than in an analysis of the contemporaneous objection rule. There is, however, a clear conceptual similarity between the two issues. Both doctrines deal with the extent of a criminal defendant's right to assert post-trial an error allegedly committed during previous criminal proceedings. Certainly the statement in *Kopa* is at least as instructive on the state of West Virginia law as the *Spaulding* dicta.

**8.** We emphasize that *Adkins* is overruled only to the extent that it addressed the issue of procedural default in the State of West Virginia. The rejection of burden-shifting jury instructions expressed therein is unaffected by our decision today.

lish a sufficient "cause" for his procedural default would be unavailing and futile. Although the treatment of alibi as an affirmative defense was still an accepted part of West Virginia criminal practice in 1981, a constitutional challenge to that practice would clearly have had a "reasonable basis." *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Indeed, our rejection of the alibi instruction in *Adkins* rested squarely upon Supreme Court authority that was fully established by 1979.[9] The failure of competent counsel to challenge the constitutionality of the alibi instruction in 1981 can only be construed as a tactical decision to which the petitioner is now bound. *Reed,* 468 U.S. at 13, 104 S.Ct. at 2909.

### III.

For the foregoing reasons, we conclude that failure to observe the requirements of contemporaneous objection at trial is an "adequate independent state ground" for denying habeas relief in the State of West Virginia. We further conclude that there can be no valid "cause" shown for petitioner's procedural default in this instance. Accordingly, we reverse the order of the district court granting Meadows' habeas petition and remand with instructions that the petition be dismissed with prejudice.

REVERSED AND REMANDED

MURNAGHAN, Circuit Judge, dissenting:

On April 17, 1981, David Meadows was tried and found guilty by a West Virginia jury of first degree murder. The charge given to the jury was one which was admitted by the majority, as well as believed by me, to be constitutionally insufficient since it wrongly placed the burden on the defendant with respect to the defense of alibi.

However, Meadows did not raise the point in the trial court, and the majority has ruled that his failure to do so brought into play the doctrine of *Wainwright v.*

*Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that, in the absence of a showing of cause and prejudice by the defendant, a failure to raise the point constituted a waiver thereof.

In the first place, an adequate showing of cause is made where, as here, the *Wainwright v. Sykes* rule is shown to be an unduly demanding requirement. Here at the time of the trial the instruction to the jury was consonant with customary practice in the trial courts of West Virginia. *See State v. Alexander,* 161 W.Va. 776, 245 S.E.2d 633 (1978). So counsel for the defendant could reasonably have concluded not to object for an objection would have been useless and would have possibly run the risk of irritating the trial judge. Such a futile exercise is not required. *Perry v. Blackledge,* 453 F.2d 856 (4th Cir.1971).

*Cessante ratione cessat ipsa lex.* When the case reached the West Virginia Supreme Court, the question of the constitutional infirmity of placing the burden of proving the alibi defense on the defendant must, despite the failure of defendant to raise it, nevertheless, have been considered by the court, for a dissent specifically cited and relied particularly on the point that burden of proof had been improperly allocated to the defendant instead of the prosecution.

> [T]he instructions were infirm because the particular alibi instruction offered by Meadows has been found to impermissibly shift the burden of proof to a defendant.

*State v. Meadows,* 304 S.E.2d 831, 842 (W.Va.1983) (Harshbarger, J., dissenting). The rationale explaining *Wainwright v. Sykes* is that a question should be preserved so that it will receive the benefit of full consideration. It seems extremely unlikely to me that Judge Harshbarger, the dissenter, would have expressed himself so

---

9. Our decision in *Adkins* drew upon the principles articulated in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

cogently on the subject without having fully apprised himself of its implications.[10]

Indeed, it may well be that this entire case has proceeded on a misunderstanding of what took place at the time of the appeal reported in 304 S.E.2d 831 (W.Va.1983). On appeal, Meadows, not having done so in the trial court, specifically raised the point that "the trial court erred in refusing to give appellant's Instruction No. 21 to the jury, regarding the necessity of the state to prove the appellant's presence at the scene of the crime beyond a reasonable doubt." If, indeed, the West Virginia court then considered *Wainwright v. Sykes* to be applicable, it is surprising that it did not say so, but instead proceeded to consider on the merits the correctness or fallaciousness of the alibi instruction. At pages 839 and 840, the court considered the matter on its merits:

> Because we find appellant's Instruction No. 21 to be repetitious of his Instruction No. 16, we hold that the trial court properly refused to give the instruction.

Erroneously holding that instruction to be satisfactory because it was repetitious of another erroneous instruction is very different from refusing to consider the correctness of the instruction at all on grounds that the point has been waived. The point of the incorrectness of the burden of proof on alibi allocation was raised and considered in the West Virginia appellate court. Hence, to proceed on the grounds that the point was not raised and, therefore, was waived, seems to me a most egregious error by the majority.

Elsewhere in the opinion, the West Virginia Supreme Court of Appeals indicated it was relying on the rule that, on appeal, a jury finding of guilt will be upheld if any reasonable set of facts appears to have been before the jury. Here, however, the question is not what *correct* instructions will be affirmed by the appellate court, but rather would an *incorrect* instruction to the trial jury nevertheless be affirmed.

In the second place, regardless of whether Meadows can show cause and prejudice for his failure to object to the alibi instruction, *Wainwright v. Sykes* should not apply because West Virginia did not require contemporaneous objections to constitutional errors at the time of his trial.[11]

The case of *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), followed hard on the heels of the trial court's decision in the instant case and saw light of day before the appeal decision in the instant case was handed down. Trial actually took place in the instant case in April of 1981, less than one year before *Adkins* was decided, making the *Adkins* case even more pertinent. In *Adkins v. Bordenkircher*, although there had been no challenge below, the court affirmed a grant of *habeas corpus* to a West Virginia petitioner on the ground that an alibi instruction unconstitutionally shifted the burden of proof on alibi, the absence of which was an essential element of the crime, from the state to the defendant. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The rationale of the Fourth Circuit decision was that, in West Virginia, according to then extant authority, a failure to raise at trial a point of constitutional significance would not be deemed a waiver of the right to raise the

---

**10.** *Cf. Spaulding v. Warden,* 158 W.Va. 557, 212 S.E.2d 619, 624:

> The State properly recognized this on appeal, and the case must be reversed for this obvious reason.

**11.** *See Spaulding v. Warden, supra,* 212 S.E.2d at 621, 624:

> While there may be merit to some of these alleged errors, most of them have no constitutional or jurisdictional basis which would render the conviction void or subject to collateral attack; they were, therefore, lost to the defendant by his failure to file notice of intent to appeal as required by Code, 1931, 58–5–4,

as amended. Code, 1931, 53–4A–1, as amended.

. . . . .

> Despite the fact that counsel made no specific request, both *State v. Fortner,* 150 W.Va. 571, 148 S.E.2d 669, and *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, impose a mandatory duty upon the trial court to hear the evidence and determine the voluntariness of a confession out of the presence of the jury prior to its introduction into evidence. This rule of constitutional law is so well established that it calls for little discussion.

point subsequently. *Adkins v. Bordenkircher*, 674 F.2d at 232; *see Spaulding v. Warden*, 212 S.E.2d at 621.

Later, as the majority attempts to show, the West Virginia Supreme Court itself expressed disenchantment with the rule in *Adkins v. Bordenkircher*, though it had not sought to do so in the *Meadows* appeal. Subsequent opinions indicate that, *in a case now arising at the trial level*, the doctrine of *Wainwright v. Sykes* would apply to constitute a waiver if the point were not raised. *See State v. Hutchinson*, 342 S.E.2d 138, 142–43 (W.Va.1986); *State v. Kopa*, 311 S.E.2d 412, 422 (W.Va.1983). However, there still remains the question, vital in the present case, of whether West Virginia was indicating that there was merely a change in the law or that the law of West Virginia had always been that a waiver would be found to have taken place upon the failure to object in the trial court. If there was a change in the law, the change occurred only after *State v. Kopa* was decided on December 15, 1983, and Meadows' lawyer would not have had to raise his objection in the trial court in 1981. On the other hand, if West Virginia was stating that the West Virginia law had always been that a waiver would be found to have taken place upon failure to raise the point in the trial court, then *Adkins v. Bordenkircher* was wrongly decided from the very instant that the opinion first saw the light of day. The court had conspicuously not taken the opportunity to say so when *State v. Meadows* was decided on June 22, 1983.

With all due respect, I find it incorrect to state that *Adkins v. Bordenkircher* was always wrong and should be overruled retrospectively as well as prospectively. Lawyers, including judges, are always taught to look at and respect opinions rendered, especially if recently rendered, by a court

having jurisdiction. The lawyer representing Meadows can hardly be faulted for not raising the point and should not be held to have committed waiver when the Fourth Circuit Court of Appeals, in an admirably and convincingly argued opinion only a year later, ruled that a failure to raise the point at trial would not have such disastrous consequences. Such authority as was then in existence in West Virginia was convincingly relied on by Judge Albert Bryan in his opinion in *Adkins v. Bordenkircher*, and I, for one, find I am unable to conclude that he erred.[12] *State v. Meadows* itself so indicates.

For the period of time after the decision in *Adkins v. Bordenkircher* and before the West Virginia court undertook the task of changing the law, defendants certainly had the reasonable expectation that *Adkins v. Bordenkircher* would apply. How is it possible to fault a lawyer representing a defendant for not raising the *Mullaney v. Wilbur* point at trial when respected authority, namely, the United States Fourth Circuit Court of Appeals, had ruled that it was not necessary that he do so? While lawyers are expected to devote full intelligence and exhaustive effort to their conduct of a defense, they are not expected to achieve miracles. Any lawyer in the place of Meadows' counsel, certainly after *Adkins v. Bordenkircher* was decided, until the West Virginia court changed its law, would have to be excused for not raising the *Mullaney v. Wilbur* point at the trial. To rule otherwise would make the practice of law abound, as the only method of self-protection, in recital of frivolous non-valid matters, for how could counsel say what was clearly not the law today would not become the law tomorrow? *See Ross v. Reed*, 704 F.2d 705, 708–09 (4th Cir.1983),

---

12. The majority does not undertake completely to eradicate the rationale of *Adkins v. Bordenkircher*. It states that "West Virginia will not consider on direct appeal any but the most egregious constitutional error unless there has been a timely objection made at trial." Is the error here "merely" egregious constitutional error, "more" egregious constitutional error, or "most" egregious constitutional error? To a

man on trial for first degree murder, any viable defense must be "most" important. Therefore, the giving of the clearly erroneous instruction would seem to me to be "most" egregious. Obviously it was constitutional error dealing with the well-established rule that constitutionally the prosecution must assume the burden of proof of every essential element of the crime.

*aff'd,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984):

> If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law. Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable....

> Since the question was novel and since counsel had no reasonable basis for asserting the constitutional claim on appeal, we conclude that there was cause for the failure to present it on appeal as well as prejudice from the instruction itself.

After the West Virginia court had announced the change in the law making it necessary that counsel raise the point at trial, it is obvious that a lawyer could be faulted for not raising the point. However, there is a narrow time period involved here. In the first category are cases following *Adkins v. Bordenkircher* before the rule in *Adkins v. Bordenkircher* was changed. I do not really understand the majority to mean to say that those lawyers would be held to have failed to perform their duties adequately. In the second category are cases decided even before *Adkins v. Bordenkircher.* When a lawyer is astute enough to foresee what a court of final authority is going to hold, he should not be faulted, I submit, when he does so successfully. That is what Meadows' counsel achieved here.

In the third category are cases decided after West Virginia's highest court has changed the law making *Wainwright v. Sykes* applicable unless the point was ade-quately preserved in the trial court. As to such a case in the third category, the result reached by the majority here would seem altogether correct, and I should not be moved to dissent. Time, however, is a fourth dimension and where in time's spectrum a case appears may make a difference. There is the very narrow first and second categories of cases in the transition period where the West Virginia Supreme Court change in the law had not yet been announced. The cases are few in number, but the paucity of such defendants does not excuse the denial to them of just treatment. Especially is that true in such a case as the present one where the defendant was on trial for first degree murder.

To address the issues presented in even a narrower way, consider that the majority has ruled that there should be no remand to consider issues of cause and prejudice. The majority reasons that in 1981, under West Virginia criminal practice, a constitutional challenge at the trial court level on the grounds here implicated would clearly have had a reasonable basis.[13] The lawyer representing Meadows was held to have bound Meadows by his failure to challenge the constitutionality of the alibi instruction placing the burden on Meadows. The hamstringing of Meadows' lawyer, and, through him, Meadows himself, hardly squares with the opinion in *Honeycutt v. Mahoney,* 698 F.2d 213 (4th Cir.1983).

There *Mullaney v. Wilbur* was following its course through the courts. The district court, in a landmark decision by Judge Gignoux, had held that an analogous self-defense instruction should have placed the burden of proof on the prosecution. In all likelihood, a lawyer in one of the states for the Fourth Circuit should not have to keep abreast of every district court decision in the United States. However, the First Circuit Court of Appeals also had affirmed Judge Gignoux. *Wilbur v. Mullaney,* 473 F.2d 943 (1st Cir.1973). Then the trial in *Honeycutt* took place, and a year later the

---

**13.** The majority is apparently overlooking the fact that *State v. Alexander,* 161 W.Va. 776, 245 S.E.2d 633 (1978) was controlling and that alibi instructions similar to the one given in the in-stant case had consistently been upheld by the Supreme Court of Appeals of West Virginia. Therefore, it is clear that any objection would have been futile.

Supreme Court ruled that Judge Gignoux and the First Circuit had both been correct. The majority of the Fourth Circuit in *Honeycutt v. Mahoney*, 698 F.2d at 217, held that there was no obligation on the part of counsel to anticipate and to raise, under risk of a waiver determination should he fail to do so, a point which had not been finally decided by the United States Supreme Court.[14] Here we have a point certainly not finally raised and decided in the West Virginia Supreme Court, with the indications that did exist all strongly pointing against the determination made in *Adkins v. Bordenkircher*. Consequently, I find it most perplexing to hold the lawyer who represented Meadows to have decided, or to be held that he should have decided, that by not objecting he was waiving the point.

The point on the merits was so compelling and straightforward application of it would have clearly demonstrated the fault of the instruction. It is hard to imagine Meadows' lawyer making a "tactical decision" which would have justified his failure to raise the point if he had any—indeed every—reasonable expectation that it would be held valid. He only failed to raise the point because of its then justifiably perceived hopelessness. Therefore, at the very least, a remand for consideration of the issues of "cause and prejudice" under *Wainwright v. Sykes* is called for.

In summary, due to the time at which Meadows was tried, he should be allowed the benefit of the decision in *Adkins v. Bordenkircher*. Consequently, the grant of *habeas corpus* by the district court should be affirmed. Alternatively, the case should be remanded to permit investigation of whether there existed cause and prejudice.

Judge PHILLIPS and Judge SPROUSE join in this dissent.

WINTER, Chief Judge, dissenting:

I concur in Judge Murnaghan's well-reasoned and persuasive dissenting opinion. I think that he conclusively demonstrates the error in the majority's reasoning. I am constrained, however, to add some additional comments of my own.

I.

In its appeal, the state advances several reasons why the judgment of the district court should be overturned. One is that Meadows has not exhausted available state avenues of post-conviction relief. While I believe that the petitioner has properly exhausted his remedies under state law,[15] I am disturbed by the majority's failure to address this issue when it decides to dispose of the case by its ruling on the state's contemporaneous objection rule. By doing so, the majority derogates from the proper authority of the state courts.

A state prisoner ordinarily may not obtain habeas corpus relief from a federal court unless he has exhausted the remedies available to him under state law. 28 U.S.C. § 2254(b), (c). The exhaustion requirement applies to each claim presented in federal habeas. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The purpose of the exhaustion requirement is to accommodate the role of the states in the federal system by giving the state courts an opportunity to review and correct alleged violations of federal constitutional rights. *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); *Picard v. Connor, supra.*

Ignoring the question of whether Meadows has exhausted his state remedies, the majority proceeds to decide an important issue of state law. 1 view that as an improper judicial approach. We must first decide if there has been exhaustion because

---

**14.** In *State v. Hutchinson*, 342 S.E.2d 138, 142 (W.Va.1986), a lawyer neglected to find a controlling authority, the opinion in *Adkins v. Bordenkircher*. That was held not to constitute ineffective assistance of counsel.

**15.** As Judge Murnaghan's dissent demonstrates, Meadows in his direct appeal did raise the question of the constitutionality of the charge, and it was considered by the West Virginia Supreme Court. Indeed the Circuit Court of Mercer County dismissed Meadows' state habeas petition because it concluded that Meadows' objection to the instruction had already been decided on direct appeal.

when we have determined in a proper case that state remedies have not been exhausted, federal principles require us to avoid "any implication as to the merits of so delicate a subject" as an interpretation of state law. *Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971). In *Slayton,* for example, the Supreme Court criticized us because we had expressed a view on the merits of a sensitive issue of state administration of the state courts following our finding that state remedies had not been exhausted. The majority's decision of an issue of state law in this case, without resolving whether the plaintiff has exhausted his state post-conviction remedies, likewise fails to give due deference to principles of federalism. Such an approach encourages other federal courts to reach out and touch upon issues of state law without due regard to the authority of the state courts. Indeed, the majority opinion's purported adherence to the finality of criminal convictions has an empty ring if we may decide cases without resolving whether state remedies have been exhausted.

This derogation from the authority of the state courts is aggravated by the fact that the majority's holding in this case *cannot* be reconciled with a finding that the defendant exhausted his state remedies. The majority's opinion, viewed in the light of the state's contention about non-exhaustion, is internally inconsistent. The majority concludes that the defendant failed to raise the issue of the improper alibi instruction on direct appeal, and that this was "a tactical decision to which the petitioner is now bound." The remaining avenue of exhaustion was through state habeas procedures which the petitioner did pursue in original petitions to the circuit court and the Supreme Court of Appeals. These respective courts rejected both habeas petitions without mention of the state's con-

temporaneous objection rule. If these original petitions failed to exhaust the petitioner's state remedies, as the state contends, then it is clearly improper for the majority to address the merits of the contemporaneous objection issue. If those petitions were exhaustive as decisions on the merits of the petitioner's constitutional claim, the state courts' decision not to base dismissal of the petitions on the state's contemporaneous objection rule means that this bar is not available as a defense against federal habeas relief.

It is well established that if a state court ignores a procedural default and decides a claim on the merits, habeas relief is not barred due to such default. *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985); *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Baker v. Muncy,* 619 F.2d 327, 329 (4 Cir. 1980). Because a state contemporaneous objection rule prohibits federal habeas review only if that procedural bar is an adequate and independent state ground for the decision of a state court, the rule barring habeas relief due to procedural default is only available where it is clear from the plain language of the state court's opinion that procedural default was a reason for the decision. *Id.*[16] *See Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983) (no independent state ground exists where the "adequacy and independence of any possible state law ground is not clear from the face of the [state court's] opinion"). Because the independence of any procedural ground for the state court's decision is not apparent from the four corners of the opinions of the West Virginia courts which exhausted the petitioner's state remedies in this case, application of the state contemporaneous objection rule is therefore not proper here. *Id.*[17]

---

**16.** *See also Walker v. Engle,* 703 F.2d 959, 966 (6 Cir.1983); *Bell v. Watkins,* 692 F.2d 999 (5 Cir. 1982), *cert. denied sub nom, Bell v. Thigpen,* 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983); *Henson v. Wyrick,* 634 F.2d 1080 (8 Cir.1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981); *Quigg v. Crist,* 616 F.2d

1107 (9 Cir.1980), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980); *Brinlee v. Crisp,* 608 F.2d 839 (10 Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980).

**17.** A few cases have not required a plain statement by the state courts of the procedural

## II.

On the merits of this case, I would affirm *Adkins* as the correct interpretation of West Virginia law in 1981 regarding the requirement of a contemporaneous objection to a constitutional error for the reasons advanced by Judge Murnaghan. Due to the harmless error rule of *Rose v. Clark*, 478 U.S. ——, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460, 474 (1986), the effect on the administration of justice from *Adkins* would not be great. Although this case is not one,[18] there are many cases in which an error is harmless beyond a reasonable doubt. Reaffirming our holding in *Adkins* also is supported by the fact that in this case neither the circuit court nor the Supreme Court of Appeals in West Virginia applied its contemporaneous objection rule to bar the petitioner's state habeas claim, thus raising an inference that no such rule applied at the time of Meadow's trial. *Ulster County Court*, 442 U.S. at 152–54, 99 S.Ct. at 2222–23. Finally, reaffirming *Adkin's* holding is also necessary because the West Virginia Supreme Court's later interpretation of the contemporaneous objection rule manifestly applied a stricter interpretation of that rule for the purpose of frustrating federal law regarding the alibi in-

struction. We should not hasten to apply this new state rule retroactively.

We must not overlook that the basis for upholding the primacy of federal law against an uncertain interpretation of a state procedural bar is firmly established. Nonetheless, the majority chooses to apply the contemporaneous objection rule as the state has urged. The court bases its holding on its view that:

> A decision in a federal habeas proceeding that a state does not require contemporaneous objection is, however, a significant determination. The effect is to substantially diminish the concept of finality in the operation of the state criminal justice system. It is, therefore, a conclusion that should not be reached lightly or without clear support in state law. Upon reconsideration, we now conclude that our analysis in *Adkins* did not satisfy that standard.

(Op. at 497) The majority's "standard"—in effect a presumption that the state will apply a contemporaneous objection rule absent a clear statement by the state courts to the contrary—directly contradicts the Supreme Court's decision in *Ulster County Court v. Allen, supra.* In that case, the Court reviewed New York law to determine whether the courts of that state apply

---

grounds for their decision, but these cases predate *Michigan v. Long* which requires such a plain statement in order for a ruling on state law to constitute adequate and independent state grounds. *E.g. Gruttola v. Hammock,* 639 F.2d 922, 929 (2 Cir.1981). *But see Klein v. Harris,* 667 F.2d 274, 285 (2 Cir.1981).

**18.** In this case the evidence against Meadows was circumstantial, and his presence at the scene of the crime was the key issue. The evidence bears repetition:

The murder victim Ms. Hairston, with whom Meadows was romantically involved, was killed on the evening of November 28, 1979, but the time of her death was a fact of some dispute. *State v. Meadows,* 304 S.E.2d at 837. Witnesses identified an automobile which Meadows had borrowed as being parked at the scene of the murder on that evening. *Id.* Earlier that day, Meadows had a fight with the murder victim. *Id.* at 834. The evidence indicated that several hours after the murder, the murderer returned to the scene of the crime and used the victim's car to transport her body to a secluded location where the body was later found. *Id.* at 837.

The victim's car was observed near her home the following morning.

On November 29, the victim was reported as missing. Meadows told a witness that day that he knew the whereabouts of the victim's car; nonetheless, he participated in a search for the car the following day with the victim's cousin without mentioning this fact. *Id.* at 835. On December 1, Meadows reported that he had found the car. Meadows had a set of keys to the car that may have been the original set that belonged to the victim. *Id.* at 835–36.

Meadows' defense at trial was that he was at the home of Veronica Finney watching television when the murder occurred. Ms. Finney testified that Meadows had returned to her home at 7:20 or 8:20 p.m. and stayed under 10:30 on the night of the murder. *Id.* at 837. No witness testified that Meadows was at the scene of the crime, and the murder weapon was never found. On direct appeal, one judge from the Supreme Court of Appeals of West Virginia dissented from the conclusion that this circumstantial evidence was sufficient to prove that Meadows was at the scene of the crime. *Id.* at 841–42 (Harshbarger, J., dissenting.)

a contemporaneous objection rule in cases of constitutional level error. After determining that "New York has no clear contemporaneous-objection policy that applies in this case," the Court unanimously concluded that the petitioner's constitutional argument was properly before the Court. 442 U.S. at 149–50, 168, 99 S.Ct. at 2220–21, 2230. The majority here concludes that a similar body of unclear state law existed at the time of our decision in *Adkins*, finding that *Adkins* was "not inherently unreasonable" and that the case law on the subject was ambiguous. (Op. at 497) But, despite the fact that West Virginia law, like New York law in *Ulster County Court*, had according to the majority's view no clear contemporaneous-objection policy, the majority nevertheless concludes that it will apply a contemporaneous objection rule to bar the petitioner's constitutional claim.

The primacy of federal law in cases such as this was also considered in *Walker v. Engle*, 703 F.2d at 966–67. There, the Sixth Circuit, relying on the Court's decision in *Ulster County Court*, rejected application of a state contemporaneous objection rule where application of the rule "had no foundation in the record or state law." The court's holding was limited to the narrow situation before it:

> We do not by this holding sanction blanket federal court review of state procedural rulings, rather the rule is to ensure that the state courts do not block federal vindication of federal constitutional rights by procedural rulings that have no basis in state law.

*Id.* A similar set of facts exists in this case because of the uneven application of West Virginia's rule of discretion in considering constitutional errors for which no objection was made.

### III.

The other aspect of the case which warrants comment is the majority's failure, without assigning any reason therefor, to remand this case for consideration of whether the instruction in this case was plain error under the majority's conception of West Virginia's current formulation of

its contemporaneous objection rule. Even if I assume the correctness of the majority's interpretation of West Virginia's contemporaneous objection rule, plain error of constitutional magnitude in the giving of a jury charge is subject to review if the giving of an instruction substantially impairs the truth-finding function of the trial. *State v. Hutchinson*, 342 S.E.2d 138, 142 (W.Va.1986). To my mind, the error in this case substantially impaired the truth-finding function of the trial as a matter of federal law, because of the tenuous basis for Meadows' conviction of first-degree murder. *Cf. Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967) ("Whether a conviction for crime should stand when a State has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean"). Thus, even accepting the majority's holding, I would still remand the case to the district court to consider whether the alibi instruction, on the facts of this case, was plain error.

In summary, I dissent from the majority's principal holding. I dissent from its failure to decide whether Meadows exhausted state remedies, and I dissent from the failure to remand the case to determine if there was plain error in the proceedings resulting in Meadows' conviction.

Judge PHILLIPS, Judge MURNAGHAN, and Judge SPROUSE authorize me to say that they join in this expression of my views.

PHILLIPS, Circuit Judge, dissenting:

I fully agree with the dissenting opinions of Chief Judge Winter and Judge Murnaghan, and write separately to express some added concerns about the process used by the majority to reach decision here.

The dissenting opinions of Chief Judge Winter and Judge Murnaghan convincingly demonstrate that in its zeal to overrule our panel decision in *Adkins*, thereby giving retroactive effect to West Virginia's belated announcement of an earlier contempora-

neous objection rule, the majority has had to disregard or violate several critical principles governing federal collateral review of state court convictions.

Specifically, by simply finessing the state's exhaustion argument, the majority has avoided the necessity for dealing with the awkward fact that Meadows had indeed exhausted his state remedies and that in the course of doing so the state courts had rejected on the merits, not on independent state procedural grounds, his burden-shifting constitutional argument. Even if, as the majority now holds, the state then had a contemporaneous objection rule, it either forgot about it, waived it *sub silentio,* or treated the asserted error as one of constitutional dimensions so potentially egregious that it was reviewable under an exception which the majority apparently now concedes still exists. Whatever the reason, the state courts' failures on Meadows' direct appeal and post-conviction proceedings to reject the constitutional argument on an independent state procedural ground precludes, on settled principle, our invocation of procedural default as a way to avoid collateral review of his claim on the merits.

We cannot, on any principled basis, live with such a means of invoking state court procedural defaults against habeas petitioners.

Another settled principle that falls victim to the majority's rush to undo *Adkins* is, as Judge Winter points out, that of *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), which directs that federal habeas courts should presume against rather than for the existence of state contemporaneous objection rules where the evidence of their existence (or consistent application) was *at the critical time* unclear in state law. That is exactly what Judge Bryan, writing for the unanimous panel in *Adkins* properly did. But the majority, yielding to the state's arguments, has now purported to find a clarity not perceived by the *Adkins* panel— solely in *later* retrospective pronouncements by the state court unsupported by any clear contemporary evidence. As Judge Murnaghan has persuasively shown,

it simply defies rational belief that if a state contemporaneous objection rule with respect to constitutional error had actually been in general operational effect at the time of Adkins' and Meadows' trials in 1977 and 1981, respectively, its existence would not have been formally invoked or at least noted in dictum in any published decisions of the highest state court until *Kopa* was decided in December 1983.

*Ulster* in effect holds that, as a matter of federal law, ambiguities or lack of clarity on the point in state statutory and decisional law are to be resolved in favor of federal habeas petitioners seeking to avoid the bar of procedural default. The narrow federal question dispositively decided in *Adkins* was therefore only that state law *appeared* at the time not absolutely to require contemporaneous objection to constitutional error. To overrule that narrow holding, supported by *Ulster's* presumption, should require more than later state court decisions which, without citing any earlier decisions clearly demonstrating that such a rule then existed, simply opine that it did. Judge Bryan's perfectly accurate reading of the *then* unclear state of state law could only be overruled by disregarding the important principle of *Ulster.*

I have recapitulated the critical points already made in the dissenting opinions of Judge Winter and Judge Murnaghan to emphasize the dangerous precedential path taken by the majority in reaching its decision. While the decision only directly affects a single habeas petitioner, the majority opinion's treatment of procedural default principles has far wider implications for habeas corpus jurisprudence in this circuit (unless, the immediate problem felt by one state having been attended to, the disregard of principle in this case is now in turn to be disregarded).

Particularly disturbing is the fact that in yielding to the state's importuning to relieve it of *Adkins'* limited barrier to the invocation of procedural default, the majority has reached out much more broadly than may have been necessary to decide

this appeal, seizing upon the unusual procedure of an initial en banc hearing in order to do so. Use of the en banc procedure as a specific means of first-instance reexamination of existing circuit precedent to which no intracircuit or intercircuit conflict has developed has its own dangerous implications, and I take this opportunity to record that all the dissenters in this case voted against convening an en banc court specifically to consider overruling *Adkins*.

Finally, it bears emphasis that, as Judge Winter has intimated in alluding to the harmless error possibility, and as the district court necessarily determined, the substantive claim here at issue is by no means an insubstantial one. There is a significant possibility that deliberately using this case as the vehicle for overruling *Adkins*, thereby almost incidentally allowing denial of Meadows' petition on procedural default grounds, forgives a due process violation that prejudicially affected the fact finding function in this petitioner's state trial.

If so, more than principle has fallen to this extraordinary effort by the court to relieve a state of a belatedly recognized problem in the administration of its criminal justice system.

I therefore dissent both to the procedure by which the majority has enabled itself to overrule *Adkins* and to the overruling.

Chief Judge WINTER, Judge MURNAGHAN, and Judge SPROUSE authorize me to say that they join in this expression of my views.