Accordingly, the order of the District Court is affirmed.

AFFIRMED.

Jinks ADKINS, Jr., Appellant,

v.

Donald BORDENKIRCHER, Superintendent, West Virginia State Penitentiary, Appellee.

Jinks ADKINS, Jr., Appellee,

v.

Donald BORDENKIRCHER, Superintendent, West Virginia State Penitentiary, Appellant.

Nos. 81–6811, 81–6812.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1982.

Decided March 24, 1982.

Andrew S. Zettle, Huntington, W. Va. (Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., on brief), for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Atty. Gen., Richard S. Glaser, Jr., Asst. Atty. Gen., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and SPROUSE, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

These cross-appeals result from the grant in part of Jinks Adkins, Jr.'s petition for a writ of habeas corpus. No error appearing in any of the rulings of the District Court, 517 F.Supp. 390, we affirm.

## I. THE FACTS

Adkins and one Denny Lee Smith were first indicted September 9, 1975, by a Logan County, West Virginia, grand jury for breaking and entering a store and stealing a safe. The premises were identified as the property of "Island Creek Stores Company, a corporation." Upon noting a minor error in this description, the prosecutor procured another indictment in January 1976. It was identical to the first, except that the store was described as belonging to "Island Creek Coal Company, a corporation, doing business in the Trade Name of Island Creek Stores Company."

Despite the return of the second indictment, a jury was impaneled, December 16, 1976, to try Adkins for the charges contained in the first indictment. On the trial date, complications arose necessitating a postponement. The presiding judge informed counsel that he would grant a continuance, but only on defendant's motion. Adkins' attorney so moved, the motion was allowed and the jury discharged.

The incidents of the continuance are disputed. The State explained that a juror's absence due to a family illness necessitated the delay. Adkins, however, maintains that the delay sprang from the unavailability of a State witness. He further asserts that he did not consent to the continuance or, at the very least, did not understand that it would result in the jury's release. Despite a West Virginia statute requiring transcription of all proceedings in a felony prosecution, see State v. Bolling, 246 S.E.2d 631, 637 (W.Va. 1978), the events of this day were either not transcribed or the recordation was lost.

Trial recommenced July 20, 1977, with a new jury sworn and impaneled. This time, however, Adkins was tried on the charges in the second indictment. His only defense was the testimony of witnesses to the effect that Adkins was not at the store when the crime was committed. Upon the close of the evidence, the Court, at the State's insistence, stated:

> The Court instructs the jury that where the state has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.

Upon the jury's finding Adkins guilty of felonious breaking and entering, the Court sentenced him to a term of one to ten years imprisonment. The West Virginia Supreme Court of Appeals refused Adkins' petition for a writ of error. Thereupon he peti-

tioned that appellate court for a writ of habeas corpus, pleading that the trial before the second jury constituted double jeopardy. This writ was likewise refused.

On May 14, 1979, Adkins petitioned the Federal District Court for the Southern District of West Virginia for habeas corpus pursuant to 28 U.S.C. § 2254. Among the grounds urged therefor were:

1) the alibi instruction unconstitutionally shifted the burden of persuasion from the State;

2) trial before the second jury constituted double jeopardy; and

3) failure to transcribe the record of the proceedings before the initial jury when a continuance was granted deprived him of procedural due process.[1]

The District Court referred the habeas petition to a Magistrate for findings and recommendations. He recommended that the writ issue because the alibi instruction impermissibly shifted the burden of persuasion to Adkins. He further concluded that the trial before the second jury did not constitute double jeopardy. The District Court, however, remanded the case to the Magistrate to allow Adkins to present additional evidence supportive of his double jeopardy plea. Upon the completion of this evidentiary hearing, the Magistrate determined

that the termination of trial [under the initial indictment] occurred not only with the consent of counsel for [Adkins], but, in fact, at his request. [Adkins'] trial counsel has testified that he made the motion for a continuance ... with the understanding that his motion would terminate that proceeding and that the jury chosen ... would be discharged....

... The Court ... finds the testimony of [Adkins'] trial counsel entirely cred-

ible and accepts his testimony as an accurate portrayal of the events surrounding the termination of the [first trial].

The District Court accepted the Magistrate's recommendations in full. The claims pressed by Adkins and not addressed by the Magistrate were dismissed as meritless. Both parties to the habeas proceedings have appealed all adverse rulings.

## II. THE ALIBI INSTRUCTION

### A. Jurisdiction

■ The State argues that Adkins is precluded from challenging the alibi instruction by Federal habeas corpus, citing (a) the exhaustion requirement of § 2254(b)[2] and (b) the independent State grounds bar of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We find both arguments unpersuasive.

Because Adkins has never presented his challenge to this instruction to the West Virginia Supreme Court of Appeals, the State correctly notes a *prima facie* case for application of the exhaustion bar. Our inquiry, however, does not stop there. Section 2254(b) suspends this requirement when circumstances render resort to the State courts inadequate to protect the prisoner's rights.[3] See, for example, *Perry v. Blackledge*, 453 F.2d 856 (4th Cir. 1971), where we permitted a North Carolina habeas petitioner to bypass the State courts when the outcome of its act was a foregone conclusion. .

In this case, the highest court of the State of North Carolina has, in the past year, spoken twice in unequivocal rejection of precisely the claim petitioner seeks to raise here. The requirement of state remedy exhaustion does not compel petitioner to go through the empty for-

---

1. Adkins also raises claims of improper cross-examination and ineffective assistance of counsel. Given our resolution of the issues herein enumerated, we need not and do not address these additional grounds for relief.

2. 28 U.S.C. § 2254(b):

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

3. *See* note 2 *supra*.

mality of offering the Supreme Court of North Carolina an opportunity to reaffirm its already clearly established doctrine

*Id.* at 557 (citations omitted).

The immediate litigation tenders a situation similar to that encountered in *Perry.* In 1978 the West Virginia high court upheld the constitutionality of the same instruction now in issue. *State v. Alexander,* 245 S.E.2d 633 (W.Va.1978). As *Alexander* was decided over one year after the last relevant pronouncement from the United States Supreme Court,[4] to force Adkins now to pursue his claim before the West Virginia court would be but a futile directive.

The *Wainwright v. Sykes, supra,* foreclosure of Federal habeas corpus likewise is inapposite. Its doctrine recognizes noncompliance with a State's contemporaneous objection rule as an independent procedural impasse to Federal relief. West Virginia now presses that Adkins' failure at trial to object to the questioned instruction would preclude his pursuit of this claim before her high court. We disagree. Although no decision precisely dispositive of this contention has been rendered, the West Virginia court has stated that its contemporaneous objection rule would not forestall a constitutional or jurisdictional challenge. *See Spaulding v. Warden,* 212 S.E.2d 619, 621 (W.Va.1975). Because no contrary precedent has been cited, we will follow *Spaulding* dicta and permit Adkins to have his claim tried.

B. *The Merits*

 Needlessly to repeat, the Supreme Court has long admonished that the prosecution must prove every element of a criminal charge beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, the burden of persuasion on affirmative defenses may be shifted to the defendant. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The West Virginia Supreme Court of Appeals has classified "alibi" as such a defense, to be sustained by the accused.

*Patterson* defined affirmative defense as one that

does not serve to negative any facts of the crime which the State is to prove in order to convict of [the crime charged.]

*Id.* at 206–07, 97 S.Ct. at 2325. Restated, it is a defense of mitigation or justification; the *prima facie* elements of the crime are presumed true.[5] An alibi, however, negates *every* fact necessary to prove a breaking and entering; the defendant could not commit the offense if he was elsewhere at the time. When viewed under the *Patterson* standard,[6] the West Virginia court's characterization of the alibi as an affirmative defense must be rejected.[7]

## III. DOUBLE JEOPARDY

 Adkins successfully made a *prima facie* case of double jeopardy; the two indictments unquestionably charged the same offense, and jeopardy attached with the impanelment of the first jury. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The District Court, however, cor-

---

4. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

5. Examples of affirmative defenses are acting "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse," *Patterson,* 432 U.S. at 219, 97 S.Ct. at 2332, and acting in self-defense. *Frazier v. Weatherholtz,* 572 F.2d 994 (4th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978).

6. Whether the alibi defense meets the criteria announced in *Patterson* for an affirmative defense is, of course, a question of Federal law. The State's contention that this Court is bound by the West Virginia court's characterization of the alibi defense is meritless.

7. Counsel for Adkins and the State have vigorously debated the quantum of prejudice resulting from saddling a defendant with the burden of creating a reasonable doubt in jurors' minds. We need not rest decision solely on so fine and abstract a point. Because the alibi instruction could mislead reasonable jurors in the proper allocation of the burden of persuasion, the confusion engendered is sufficient to warrant its rejection. *See Sandstrom v. Montana,* 442 U.S. 510, 516–18, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979).

rectly held that the instant situation fell within the exception to the double jeopardy prohibition articulated in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

> [W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

*Id.* at 607, 96 S.Ct. at 1079 (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)).

Adkins' attempt to avoid application of the *Dinitz* doctrine because his attorney moved for a continuance rather than a mistrial is misconceived. Invocation of this rule is not dependent upon the label attached to the trial court's action. Instead, the exception applies unless

> the order contemplates an end to all prosecution of the defendant for the offense charged.

*Lee v. United States*, 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977). As the District Court found that Adkins' counsel did not intend an end to the prosecution by his motion for a continuance, the *Dinitz* exception eliminates the double jeopardy defense.

Similarly flawed is Adkins' attempt to extricate his case from the *Dinitz* rule with the assertion that he did not "knowingly and intelligently" waive his double jeopardy rights. The courts have uniformly discarded a strict waiver requirement in double jeopardy pleas. *United States v. Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080; *United States v. Bobo*, 586 F.2d 355, 364–65 (5th Cir. 1978); *United States v. Jamison*, 505 F.2d 407, 412–13 (D.C.Cir.1974). *Jamison* crisply explains the impropriety of a waiver requirement in these factual situations:

> The startling implication of barring reprosecution after a mistrial brought about by defense counsel's own errors and on his own motion is that the government could irrevocably lose the right to prosecute for a given crime without itself

having committed the least impropriety, and with the trial judge having erred only in declining to second guess defense counsel as to the accused's best interests.

*Id.* Consequently, we find no constitutional infirmity in the trial of Adkins before the second jury.

## IV. FAILURE TO TRANSCRIBE HEARING

■ Claiming to be deprived of procedural due process, Adkins next assails the State's failure to produce a transcript of the hearing at which the first jury was discharged. Prejudice is noted in his inability to prove his version of these events. While we may assume the absence of sharp adherence to the West Virginia law and we may agree that Adkins was hindered by the absence of a transcript, we fail to grasp any basis for Federal habeas relief in this claim. Quite simply, we do not find the due process clause of the Fourteenth Amendment to demand transcription of all State criminal proceedings.

In this collateral attack on Adkins' conviction, an evidentiary hearing was held before the Magistrate to resolve the factual disputes attending this hearing. Both parties faced the task of proving their contentions without the aid of a transcript. The determinations resulting from that hearing and adopted by the District Court are binding on this Court unless clearly erroneous. No such error appearing, we accept those findings for resolution of Adkins' double jeopardy insistence.

With no substance evident in the errors assigned by either party, the judgment on appeal is

*Affirmed.*