UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                                No. 01-4065

CHARLES THOMAS DICKERSON,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-97-159-A)

Argued: October 30, 2001

Decided: December 27, 2001

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Kurt H. Jacobs, SIDLEY, AUSTIN, BROWN & WOOD, Washington, D.C., for Appellant. Robert Andrew Spencer, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Jeffrey T. Green, SIDLEY, AUSTIN, BROWN & WOOD, Washington, D.C.; James W. Hundley, BRIGLIA & HUNDLEY, P.C., Fairfax, Virginia, for Appellant. Kenneth E. Melson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Charles Thomas Dickerson appeals his convictions and sentence for one count of conspiracy to commit bank robbery, one count of bank robbery, and one count of use of a firearm during and in relation to a crime of violence. Dickerson argues that the district court erred by (1) denying Dickerson's motion to suppress the testimony of the Government's key witness; (2) improperly instructing the jury; (3) enhancing Dickerson's sentence based upon an unproven overt act; and (4) failing to depart downward due to Dickerson's lengthy pretrial term of home detention. Finding no reversible error, we affirm.

I.

A.

On January 24, 1997, the First Virginia Bank in Alexandria, Virginia was robbed. An eyewitness recorded the license plate number of the getaway vehicle, which was traced to Dickerson. On January 27, several armed police officers and federal agents visited Dickerson's apartment in Takoma Park, Maryland to question him regarding the bank robbery. The officers knocked on Dickerson's door and asked him if he would accompany them to the FBI Field Office in the District of Columbia for questioning about the robbery. Dickerson agreed but asked if he could retrieve his coat from the bedroom. When Dickerson turned to get his coat, two agents followed him into his bedroom. As Dickerson picked up his coat from the bed, the agents observed cash, in an amount later determined to be $552, fall onto the bed. The agents requested Dickerson's consent to search his apartment, which Dickerson denied. Dickerson accompanied the agents to the FBI field office, during which time he was not formally placed under arrest or handcuffed.

At the field office, Dickerson was interviewed by Special Agent Lawlor and Detective Thomas Durkin of the Alexandria Police Department. Dickerson denied any involvement in the robbery but admitted that he had driven to Old Town, Alexandria on the morning in question to look at a restaurant. Lawlor then obtained, by telephone, a search warrant for Dickerson's apartment, relying upon the facts that the robber left the scene in a car registered to Dickerson and that Dickerson had over $550 in cash in his apartment when they had arrived, had just that day paid his landlord $1350 in cash to cover back rent, and had admitted that he was near the bank at the time of the robbery. Lawlor and Durkin informed Dickerson that the FBI had obtained a search warrant for his apartment, prompting Dickerson to change his statement sometime thereafter.

In his amended statement, Dickerson admitted to being the getaway driver in a series of bank robberies and identified Jimmy Rochester as the actual bank robber. Following these statements, Dickerson was read his *Miranda* rights and was placed formally under arrest.

As a result of Dickerson's confession, Rochester was apprehended by the police and placed under arrest. At that time, Rochester admitted to robbing eleven banks in Georgia, three banks in Virginia (including the First Virginia Bank in Old Town, Alexandria), four banks in Maryland, and an armored car in Maryland. Rochester also stated that Dickerson was his getaway driver in each of the Maryland and Virginia bank robberies and testified to that effect at Dickerson's trial three years later.

## B.

On June 24, 1997, Dickerson was indicted by a federal grand jury in the Eastern District of Virginia for one count of conspiracy, in violation of 18 U.S.C.A. § 371 (West 2000); three counts of aiding and abetting bank robberies, in violation of 18 U.S.C.A. §§ 2113(a) and (d) and 2 (West 2000); and three counts of aiding and abetting the use of a firearm during a crime of violence, in violation of 18 U.S.C.A. §§ 924(c) and 2. On May 19, 1997, Dickerson moved to suppress his confession, the physical evidence seized in his apartment, physical evidence seized in his car pursuant to a warrant-authorized search,

and Rochester's testimony, claiming that the identification was a result of the unlawful confession.

On July 1, 1997, the district court entered an order and memorandum opinion granting Dickerson's motion to suppress his confession and the physical evidence seized from his apartment, but it denied Dickerson's motion to suppress Rochester's testimony and the evidence found in his car. Dickerson filed a motion seeking reconsideration of the district court's order denying suppression of Rochester's testimony, arguing that Rochester's testimony was tainted by Dickerson's unlawful arrest, which the district court denied in an order and accompanying memorandum opinion on August 4, 1997.

On February 8, 1999, in an interlocutory appeal, we reversed the district court's order granting suppression of the confession and the physical evidence seized from the apartment. On June 26, 2000, the Supreme Court reinstated the district court's decision to suppress Dickerson's confession. Upon remand to the district court, Dickerson filed another motion for reconsideration of the district court's order denying suppression of Rochester's testimony, again arguing that Rochester's testimony was tainted by Dickerson's unlawful arrest, which the district court denied without explanation.

Following Dickerson's trial, the jury returned a verdict finding Dickerson guilty of one count of conspiracy, one count of aiding and abetting a bank robbery, and one count of aiding and abetting the use of a firearm during a crime of violence. Dickerson was found not guilty of the remaining four counts. On January 5, 2001, Dickerson was sentenced to 125 months imprisonment and three years of supervised release. On January 12, 2001, he filed a notice of appeal to this Court.

II.

We first address Dickerson's argument that the district court erred by denying his motion to suppress Rochester's testimony. Specifically, Dickerson contends that Rochester's testimony should have been excluded as "fruit of the poisonous tree" because the officers were led to Rochester only through Dickerson's identification of

Rochester, which followed Dickerson's unconstitutional arrest.[1] *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). We review the district court's application of the "fruit of the poisonous tree" doctrine de novo, viewing the evidence in the light most favorable to the Government, as the prevailing party below. *United States v. Elie*, 111 F.3d 1135, 1140 (4th Cir. 1997). We review the district court's factual findings made in the course of a suppression hearing for clear error. *See United States v. McKinnon*, 92 F.3d 244, 246 (4th Cir. 1996).

Dickerson first contends that his arrest violated the Fourth Amendment because probable cause for the arrest was lacking. Probable cause to justify an arrest arises when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) ("Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.") (internal quotation marks omitted). Probable cause requires more than "bare suspicion" but requires "less than evidence which would justify condemnation or conviction." *Brinegar*, 338 U.S. at 175-76 (internal quotation marks omitted); *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (en banc). All of the circumstances

---

[1]In its initial ruling on the admissibility of Rochester's testimony, the district court relied upon our decision in *Elie*, apparently construing Dickerson's argument as challenging Rochester's testimony as being tainted by Dickerson's unlawfully obtained confession. *Elie*, 111 F.3d at 1144 (holding that the tainted fruits doctrine does not apply to derivative evidence discovered as a result of statements taken in technical violation of *Miranda*); (Memorandum Opinion dated August 4, 1997, at 2 ("In light of the Fourth Circuit's ground breaking decision in *Elie*, this argument is without merit.")). Both here and below, however, Dickerson has contended that Rochester's testimony is tainted because of Dickerson's unlawful arrest, as opposed to his unlawfully obtained confession. Nevertheless, after conducting a de novo review of this issue, we conclude that the district court did not err by denying Dickerson's motion to suppress Rochester's testimony.

known to the officer at the time of the arrest are considered to evaluate whether probable cause existed. *See Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996).

The Government has conceded that the district court found that Dickerson was arrested when law enforcement officers escorted him out of his apartment, and it has not challenged this factual finding on appeal. (Appellee's Br. at 22.) Reviewing the totality of the circumstances, we conclude that the officers had probable cause to support Dickerson's arrest when he was taken from his residence.[2] First, the officers had reliable information from an eyewitness establishing that Dickerson's car was used as the getaway vehicle in the bank robbery. Stephen DeWitt, a probation officer for the Alexandria Juvenile Court, witnessed the robber, later identified as Rochester, run down the street holding a dark bag and get into the passenger side of a white Oldsmobile Ciera. DeWitt recorded the license plate number from the Ciera and provided it to the FBI. Using this license plate number, the agents traced the Ciera to Dickerson and located his apartment, and upon arriving at Dickerson's apartment, observed the Ciera parked in the vicinity. Additionally, the agents contacted Dickerson's landlord and ascertained that on January 27, Dickerson paid $1350 in cash for back rent after missing three months of rent payments. Finally, the agents saw a large amount of cash, later determined to be $552, on Dickerson's bed. Taken as a whole, these facts would lead a reasonable person to believe that Dickerson had been involved in the January 24 bank robbery. *See, e.g.*, *Gray*, 137 F.3d at 770; *Taylor*, 81 F.3d at 434.

Dickerson also argues that the arrest was unlawful because the officers arrested him in his home without a warrant, which, regardless of the existence of probable cause, is unconstitutional under *Payton v. New York*, 445 U.S. 573 (1980). *See United States v. McCraw*, 920 F.2d 224, 228 (4th Cir. 1990) ("An arrest warrant is always required for an arrest inside the arrestee's home, even when probable cause exists, absent exigent circumstances.") (citing *Payton v. New York*,

---

[2]The district court did not make a probable cause finding, but it did note that it "strained credibility" to believe that the FBI would release Dickerson in light of the information available to the FBI at the time of Dickerson's arrest. (J.A. at 86L n.3.)

445 U.S. 573 (1980)). Having concluded that probable cause existed at the time of the arrest, however, we need not resolve whether the arrest violated *Payton* because, even assuming so, Rochester's testimony was not tainted by the alleged Fourth Amendment violation.

As the Supreme Court held in *New York v. Harris*, 495 U.S. 14 (1990), where officers violate the Fourth Amendment by arresting a suspect in his home without a warrant but have probable cause for the arrest, the exclusionary rule does not bar the Government's use of a statement made by the suspect outside his home. *Id.* at 21. The rationale underlying *Harris* is clear: the subsequent statement given by the defendant cannot fairly be said to have been caused by the illegality of the arrest; thus, excluding the statement does not serve the purpose of the rule rendering the conduct unlawful. *See Harris*, 495 U.S. at 20 ("[S]uppressing the statement taken outside the house would not serve the purpose of the rule that made Harris' in-house arrest illegal."). This rationale is particularly compelling here, where there was an intervening *Miranda* violation that was the direct cause of the identification of Rochester. Because Dickerson does not claim, however, that the identification of Rochester is tainted by the *Miranda* violation, and because the identification was not "the fruit of the fact that the arrest was made in the house rather than someplace else," evidence stemming from the identification is not subject to exclusion. *Harris*, 495 U.S. at 20. Thus, the district court did not err by denying Dickerson's motion to suppress Rochester's testimony.

### III.

Dickerson next argues that the district court improperly instructed the jury in several respects. First, he asserts that the district court incorrectly responded to a jury question. Next, he contends that the district court's jury instruction regarding conspiracy was erroneous. Finally, Dickerson argues that the district court improperly instructed the jury on the "conjunctive charge, disjunctive proof" principle. The district court is given wide latitude in formulating its jury instructions, and, to the extent the instructions accurately state the controlling law, they will be upheld. *United States v. Hassouneh*, 199 F.3d 175, 181 (4th Cir. 2000).

A.

In response to a jury question wherein the jury asked, "If a person brings a gun into their home that they know has been used in a crime, does this constitute conspiracy?," the district court stated, "It could be an act in furtherance of the conspiracy if you find there was a conspiracy and that Mr. Dickerson was a willing participant." (J.A. at 834-35.) Dickerson argues that the district court's response mischaracterized the elements of a conspiracy because it suggested that an overt act, standing alone, constitutes a conspiracy.

Conspiracy requires proof of three elements: (1) an agreement among the defendants to do something illegal; (2) knowing and willing participation in the agreement; and (3) an overt act in furtherance of the purpose of the agreement. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). The district court's answer referenced each element necessary to convict Dickerson of conspiracy. Thus, we find no error with this aspect of the given response.

Dickerson also argues that the district court's response was improper insofar as it indicated that the jury could find that his concealment of the gun after the First Virginia Bank robbery on January 24 was an overt act of his conspiracy count, despite the fact that this type of concealment was not and could not have been included in the indictment as an overt act.[3] *See Grunewald v. United States*, 353 U.S. 391, 405 (1957) (holding that acts of concealment, committed after completion of the main objectives of the conspiracy, cannot constitute overt acts for purposes of a conspiracy conviction). One of the overt acts charged in the conspiracy count was a substantive bank robbery offense, for which Dickerson was charged separately in Count 4 and convicted. (J.A. at 75, 897.) Because the jury unanimously found Dickerson guilty of an overt act charged in the conspiracy count, the Government has established that any error in the district court's

---

[3]In the indictment, the Government alleged, "after defendant DICKERSON . . . robbed the First Virginia Bank and fled in DICKERSON's car, defendant DICKERSON kept the silver, semi-automatic .45 caliber handgun used in the robbery." (J.A. at 76.) The First Virginia Bank robbery was the last robbery referenced in the indictment; in fact, it occurred three days before Dickerson's arrest.

response with respect to whether concealment could constitute an overt act is harmless beyond a reasonable doubt. *See United States v. Hastings*, 134 F.3d 235, 241 (4th Cir. 1998) (noting that where a defendant timely objects to the giving of an erroneous instruction, "the conviction may be affirmed only if the court is satisfied, beyond a reasonable doubt, that the error was harmless."); *Stitt v. United States*, 250 F.3d 878, 884-85 (4th Cir. 2001) (holding that the district court's continuing criminal enterprise jury instruction was erroneous for failing to instruct the jury that it had to agree unanimously on the three predicate violations but that the error was harmless because the jury unanimously found Stitt guilty of the three predicate violations).

B.

Dickerson next claims that the trial court's original jury instruction regarding conspiracy was erroneous. The district court instructed the jury as follows:

> If you should find beyond a reasonable doubt from the evidence in the case that the Government has proven the existence of the conspiracy charged in the indictment, that during the existence of the conspiracy one of the overt acts alleged was knowingly done by one of the conspirators, in furtherance of some objective of the conspiracy, proof of the conspiracy offense charged is complete. It's complete to every person found by the jury to have been willfully a member of the conspiracy at the time the overt act was committed, as well as to any person who willfully joins the conspiracy at a later time regardless of which of the conspirators did the overt act.

(J.A. at 799-800.)

Dickerson attempts to isolate the first sentence of this instruction without reference to the second sentence, arguing that the first sentence omits the element of knowing and willing participation in the agreement. "[J]ury instructions must be viewed in their entirety and in context." *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996). For this reason, "parts of the jury instruction may not be viewed in isolation." *United States v. Morrison*, 991 F.2d 112, 116 (4th Cir.

1993). The two sentences of this instruction, when read together, ade-quately instructed the jury as to all three elements necessary to estab-lish a conspiracy: (1) an agreement; (2) knowing and willing participation in the agreement; and (3) an overt act in furtherance of the purpose of the agreement. *Burgos*, 94 F.3d at 857. Accordingly, Dickerson has not established error in the district court's conspiracy instruction.

## C.

Dickerson argues that the district court's "conjunctive charge, dis-junctive proof" instruction was erroneous. Traditionally, a conjunctive charge, disjunctive proof instruction is given to inform the jury that, although an indictment may charge that a defendant committed an offense in a number of different ways, the jury need find that the defendant committed the offense in only one of the listed ways. *United States v. McGinnis*, 783 F.2d 755, 757 (8th Cir. 1986); *see also United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967) (providing that an indictment worded conjunctively under a statute which uses disjunctive language may be disjunctively considered by the jury and proof on any one of the allegations is sufficient to sustain a conviction); *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (stating that jurors are not required to agree on a single means of commis-sion). Dickerson contends that the district court's instruction allowed the jury to apply the conjunctive charge/disjunctive proof principle to the elements of each offense rather than to the alternative means of committing each offense.

The district court instructed the jury as follows:

> [A]lthough the indictment may charge the defendant with *committing an offense in several ways* using conjunctive language, in other words, and, it's sufficient if the Govern-ment proves the offense in the disjunctive, in other words, or.
>
> That is to say the jury may convict on a unanimous find-ing of *any one of the elements of the conjunctively charged offense*. Therefore, I instruct you, it's not necessary for the Government to prove that the defendant did each of the

things named in the particular count of the indictment. It's sufficient if the Government proves beyond a reasonable doubt that the defendant did *one of the alternative acts* as charged as long as you all agree *the same paticular [sic] alternative act* was committed.

(J.A. at 815 (emphasis added).) Again, we review jury instructions in context and in their entirety. *Muse*, 83 F.3d at 677. The context of the conjunctive charge, disjunctive proof instruction indicates that the district court was referring to "elements," "alternative acts," and different "ways" of committing an offense as interchangeable terms in that instruction. *See Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (noting that words can have different meaning depending on their context); *United States v. Jacquillon*, 469 F.2d 380, 386 (5th Cir. 1972) ("The established rule of pleading in indictments is that such *elements* are to be alleged in the conjunctive, even though the statute is worded in the disjunctive. Since proof of either *element* would support a conviction, we find no merit in the appellant's argument." (emphasis added) (internal quotation marks omitted)).

Further, when examining the jury instructions in their entirety, as we must, it is apparent that the district court repeatedly informed the jury of the need to agree on all of the elements of the charged offenses. (J.A. at 801-02, 816-19.) When instructing the jury as to each count in the indictment, the district court informed the jury each time that the Government had the burden of "establishing each . . . element [of the offense] by proof beyond a reasonable doubt." (J.A. at 816-19.) To be sure, the conjunctive charge, disjunctive proof instruction would have been clearer had the district court substituted "alternative acts" for "elements." Nevertheless, when the term "elements" is read in context of the conjunctive charge, disjunctive proof instruction and when the jury instructions are read in their entirety, the instructions adequately state the controlling law. Thus, we reject Dickerson's challenges to the adequacy of the district court's jury instructions.

IV.

Dickerson next challenges the manner in which the district court calculated his base offense level. Specifically, he argues that the dis-

trict court erred when, at sentencing, it increased his base offense
level by two levels pursuant to United States Sentencing Guideline
§ 1B1.2(d) for conspiring to rob the Citizens National Bank in Bowie,
Maryland on January 8, 1997. In reviewing the application of the
United States Sentencing Guidelines, we examine factual determina-
tions for clear error and legal questions de novo. *United States v.
Blake*, 81 F.3d 498, 503 (4th Cir. 1996).

Sentencing Guideline § 1B1.2(d) provides that "[a] conviction on
a count charging a conspiracy to commit more than one offense shall
be treated as if the defendant had been convicted on a separate count
of conspiracy for each offense that the defendant conspired to com-
mit." The application note states that when the verdict does not spec-
ify which offenses were the object of the conspiracy, "subsection (d)
should only be applied with respect to an object offense alleged in the
conspiracy count if the court, were it sitting as a trier of fact, would
convict the defendant of conspiring to commit that object offense."
U.S.S.G. § 1B1.2(d) cmt. note 4. Note 75 of Appendix C explains
that, when exercising its authority under § 1B1.2(d), the district
court's decision is governed by a reasonable doubt standard. *See
United States v. McKinley*, 995 F.2d 1020, 1025-26 (11th Cir. 1993).

Dickerson's conspiracy charge listed eight robberies as object
offenses of the conspiracy. The jury's general verdict of guilt on the
conspiracy count did not make clear which object offense(s) Dicker-
son was guilty of committing, except with respect to the First Virginia
Bank robbery, of which the jury expressly found Dickerson guilty.
Thus, under U.S.S.G. § 1B1.2(d), the district court was charged with
determining whether Dickerson's guideline range should be increased
because, if the court were sitting as a trier of fact, it would convict
Dickerson of any of the other seven robberies listed in the indictment.

The district court concluded that the other two robberies for which
Dickerson was charged and acquitted should not be included in the
offense range calculation. The remaining five bank robberies that
were charged as overt acts were not charged as substantive offenses.
With respect to four of these robberies, the district court found that
the evidence was insufficient to conclude that Dickerson conspired to
commit the robberies beyond a reasonable doubt. The district court
determined, however, the evidence was sufficient to conclude beyond

a reasonable doubt that Dickerson conspired to commit the Citizens National Bank robbery, and the court increased Dickerson's base offense level by two levels based on this finding.

Dickerson argues that there was insufficient evidence of his involvement in the Citizens National Bank robbery for a trier of fact to conclude beyond a reasonable doubt that Dickerson conspired to commit that robbery. The evidence linking Dickerson to the Citizens National Bank robbery consisted of the testimony of two witnesses, Andrew Saderholm, a mechanic who witnessed the robbery while he was working at a nearby Merchant Tire store, and Rochester. Rochester testified that Dickerson helped him rob the Citizens National Bank. Saderholm testified that on the day of the robbery, he saw two African-American men driving a 1986 white, four-door Oldsmobile Cutlass Ciera, with D.C. dealer tags. He further testified that the two men parked the car near the bank, directly in front of Saderholm's store, and that the parking spot, together with the behavior of the men, was so unusual that he joked with his co-workers that the men were "casing" the bank. (J.A. at 482.) According to Saderholm's testimony, he saw one of the men come out of the bank carrying a black knapsack, moving very quickly toward the car, and saw the car leave "at a very high rate of speed." (J.A. at 485.)

As the district court noted, Saderholm's description of the car matched the description of Dickerson's car. The district court concluded that Saderholm's testimony placed Dickerson at the scene of the Citizens National Bank robbery and corroborated Rochester's testimony directly implicating Dickerson in that robbery. Accordingly, the district court determined that this corroboration rendered Rochester's testimony credible with respect to the Citizens National Bank robbery, although it noted reasons to disbelieve other aspects of Rochester's testimony. The district court also noted that Dickerson did not have an alibi for the date of the robbery. Dickerson argues that this evidence is insufficient to support the district court's finding because Rochester's testimony was inherently incredible; the purported corroboration was not probative, insofar as Dickerson testified that he loaned his car to Rochester on occasion; and the district court improperly switched the burden of proof to Dickerson by faulting him for failing to provide an alibi.

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). We may not reject the district court's finding just because we might have come to a different result on the same evidence. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). Moreover, as the Supreme Court stated in *Anderson*:

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* at 575. In light of the evidence supporting the district court's finding, Dickerson has not demonstrated that the district court's finding was clearly erroneous.

Similarly, Dickerson's attempt to characterize the district court's comment regarding his failure to provide an alibi as an error of law justifying reversal is unavailing. In response to the Government's question regarding Dickerson's whereabouts on the date of the Citizens National Bank robbery, Dickerson testified that he could not remember what he was doing that day. (J.A. at 663.) In *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir. 1982), *overruled on other grounds* by *Meadows v. Holland*, 831 F.2d 279, 282 (4th Cir. 1987), the defendant placed alibi evidence before the jury, and the district court instructed the jury that the defendant had the burden of persuasion to prove the existence of the alibi. We held that no burden of persuasion could be placed upon the defendant to prove his alibi to the jury's satisfaction because alibi is not an affirmative defense. *See id.* While it is certainly true that, under *Adkins*, the Government bears the burden of disproving the defendant's proffered alibi to prove the elements of the crime charged, *Adkins* did not hold that, once a jury is satisfied that the Government has met this burden, the lack of alibi is nonetheless improper circumstantial evidence of guilt. To the contrary, the trier of fact is entitled to review all of the evidence, including the defendant's testimony regarding an alibi or lack thereof, to determine whether the Government has proved all of the elements of the crime

beyond a reasonable doubt. *Frye v. Procunier*, 746 F.2d 1011, 1013 (4th Cir. 1984) (holding, where a defendant asserts an alibi, "alibi evidence is properly considered along with all the other evidence at trial"); *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984) ("*Unquestionably the jury could find* that Hicks' [alibi] statement at the time of his arrest was untruthful, *that he had no alibi*, and that he was guilty as charged." (emphasis added)); *Lord v. Wood*, 184 F.3d 1083, 1088 (9th Cir. 1999) (noting, where a defendant's statement that he did not have an alibi was part of the government's case, that proof against defendant included lack of alibi); *Jenner v. Class*, 79 F.3d 736, 741 (8th Cir. 1996) (stating, where defendant presented an alibi defense, that prosecutor was entitled to refer to lack of alibi in arguments to the jury). Accordingly, the district court's consideration of Dickerson's testimony that he had no alibi for the date in question did not impermissibly shift the burden of proof under *Adkins* or otherwise constitute error.

V.

Finally, Dickerson argues that the district court erred by refusing to grant a downward departure based upon Dickerson's lengthy period of pre-trial home arrest. In declining to grant this downward departure, the district court stated, "let me just say as to departure, the Court realizes it can depart upwards or downwards on a given case depending on the circumstances and the law." (J.A. at 880.) It recognized U.S.S.G. § 5K2.0 as a basis for its authority to depart, stating, "where the circumstances and consequences of a case are 'atypical' or 'unusual' and therefore fall outside the guideline's heartland of cases." (J.A. at 881.) It then found that "[a] three year and eight month period of home arrest, while quite lengthy, is not atypical or unusual circumstances that warrants a downward departure." (J.A. at 881.)

A district court's refusal to depart pursuant to § 5K2.0 is not reviewable unless it was based on the district court's "mistaken impression that it lacked the authority to depart." *United States v. Matthews*, 209 F.3d 338, 352 (4th Cir. 2000). Despite the district court's explicit recognition of its authority to depart, Dickerson argues that the the district court's refusal to depart is reviewable because it was based on the belief that the court lacked the authority to depart. After concluding that Dickerson's home detention did not

warrant departure under § 5K2.0, the district court stated, "[t]he defendant has offered no authority in the sentencing guidelines or Fourth Circuit precedent that would permit a downward departure to account for the three years of home detention he served. Without such authority, the Court may not depart downward because the defendant was on home confinement for three years prior to the trial." (J.A. at 882.) We conclude that the best reading of the entire passage is that the district court recognized its authority to depart under § 5K2.0 but declined to do so because, under its view of this Circuit's precedent, the length of Dickerson's home detention was not atypical or unusual. Thus, the district court's refusal to depart downward is not reviewable.

VI.

For the foregoing reasons, Dickerson's convictions and sentence are

*AFFIRMED*.